UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KARON JACKSON,

    Plaintiff,                                Case No. 2:14-cv-11600

v.                                           HONORABLE STEPHEN J. MURPHY, III

VHS DETROIT RECEIVING HOSPITAL,
INC.,

    Defendant.
                                              /

**OPINION AND ORDER DENYING DEFENDANT'S
SECOND MOTION FOR SUMMARY JUDGMENT [41]**

Before the Court is the second motion for summary judgment of Defendant VHS Detroit Receiving Hospital, Inc. (DRH). The Court granted the first motion, and Plaintiff Karon Jackson appealed. The Court of Appeals subsequently reversed and remanded the case. DRH then moved for leave to file a second motion for summary judgment, which the Court granted. The Court has reviewed the briefs and finds that a hearing is unnecessary. *See* E.D. Mich. 7.1(f)(2). For the following reasons, the Court will deny DRH's second motion for summary judgment.

**BACKGROUND**

The facts of the case were laid out in the Court's previous order (ECF 21) and in the Court of Appeal's opinion (ECF 25). In brief: Jackson worked as a mental health technician at the Detroit Receiving Hospital from 1988 to 2013. She was terminated after she escorted the wrong patient out of the hospital's Crisis Center. She filed a charge of sex discrimination with the Equal Employment Opportunity Commission, which ultimately issued her a notice of dismissal and her right to sue. She did sue, and the result is this case.

**STANDARD OF REVIEW**

Summary judgment is proper if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material for purposes of summary judgment if its resolution would establish or refute an "essential element[] of a cause of action or defense asserted by the parties[.]" *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984).

In considering a motion for summary judgment, the Court must view the facts and draw all inferences in the light most favorable to the non-moving party. *Stiles ex rel. D.S. v. Grainger Cty., Tenn.*, 819 F.3d 834, 848 (6th Cir. 2016). The Court must then determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). And although the Court may not make credibility judgments or weigh the evidence, *Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015), a mere "scintilla" of evidence is insufficient to survive summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff," *Anderson*, 477 U.S. at 252.

## DISCUSSION

In sex-discrimination cases like this one, the Court employs the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the framework, Jackson has the initial burden of establishing a prima facie case of discrimination. The burden then shifts to DRH to articulate a legitimate non-discriminatory reason for its employment decision. Jackson then must prove by a preponderance of the evidence that the DRH's justification was a pretext for discrimination. *Id.* at 804.

In her opposition to the first motion for summary judgment, Jackson argued that she was similarly situated to two other male employees who were not terminated for similar actions: Ronald Duncan and Lester Little. The Court found that Jackson established a prima facie case as to Duncan, ECF 21, PgID 292–93, and the Court of Appeals reached the same conclusion as to both Duncan and Little. *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 778 (6th Cir. 2016).

Nevertheless, DRH claimed it had a legitimate, non-discriminatory reason for firing Jackson but not Duncan or Little. Specifically, DRH argued that Jackson's mistake was more egregious than either Duncan's or Little's mistakes. But the Court of Appeals concluded that:

> when all relevant evidence is viewed in the light most favorable to Jackson, and all reasonable inferences are drawn in her favor, the circumstances surrounding her termination would permit a reasonable jury to infer that DRH's justifications for her termination were pretextual, and that she was instead terminated because of her sex.

*Id.* at 779, and remanded the case.

Now, DRH has sought and received leave to file a second motion for summary judgment for the purpose of expanding the factual record.[1] *See* ECF 36, PgID 357. The new facts are not voluminous: they are simply three short declarations by DRH employees[2] involved in and familiar with Jackson's termination. So the Court must revisit the *McDonnell-Douglas* framework to determine what outcome the new facts warrant.

---

[1] DRH's subsequent summary-judgment motion raised arguments that it did not mention in its motion for leave. The Court will therefore not address those arguments.

[2] Carol Moore was the "Director of Patient Services - Psychiatry" at DRH when the events in the case took place. ECF 41-9, PgID 563, 565. Leorena Heard was "Manager of Patient Services," ECF 41-15, PgID 595, and Janet Hash was the "Director of Recruiting, Employment and Workforce Planning," ECF 41-21, PgID 616.

I. Prima Facie Case

DRH implicitly argues that, had the Court of Appeals—and the Court—possessed the declarations it has now provided, they would not have determined that Jackson established a prima facie case. Jackson disagrees, and suggests that the new declarations reveal only the declarants' opinions on some discrete issues but do nothing to disrupt the Court of Appeals' determination.

The prima facie stage is a preliminary one, and the burden it imposes "is not onerous." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). As the Court of Appeals emphasized here, "[o]ne common misapplication of the *McDonnell Douglas/Burdine* framework is the tendency to push all of the evidence into the prima facie stage and ignore the purpose for and application of the three stages." *Jackson*, 814 F.3d at 778 (quoting *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 813 (6th Cir. 2011)). Rather, the prima facie stage merely "eliminates the most common nondiscriminatory reasons" for the adverse action and "raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." *Burdine*, 450 U.S. at 254.

Moore's and Heard's declarations shed a bit more light on why they believed Jackson's improper discharge was more serious than the rules violations of Duncan or Little. According to DRH, Duncan's and Little's infractions presented "no objectively serious consequences." ECF 41, PgID 429. For instance, although Little failed to search a patient (thereby allowing him to retain several knives) that particular patient did not (according to Moore's clinical judgment) pose a danger to himself or others. ECF 41-9, PgID 567–68. And although Duncan also improperly discharged a patient, the patient had "no signs or

4

symptoms of depression, psychosis, or violence" and was therefore "not a danger to herself or others." *Id.* at 565. In contrast, the patient Jackson discharged had admitted to "suicidal thoughts and plans to kill himself" and that he "had stopped taking his prescribed medications." *Id.* at 568. So unlike Little's and Duncan's patients, Jackson's patient "was diagnosed as being an imminent danger to himself and to others[.]" *Id.*

DRH says these facts make all the difference because "a plaintiff cannot establish a reasonable inference of discriminatory motive based on her 'employer's more severe treatment of more egregious circumstances.'" ECF 41, PgID 428 (quoting *Jackson*, 814 F.3d at 777). In support, DRH points to the two cases it relied upon at appeal: *Ruth v. Children's Med. Ctr.*, 940 F.2d 662 (6th Cir.1991) (table), and *Colvin v. Veterans Admin. Med. Ctr.*, 390 F. App'x 454 (6th Cir. 2010). In each case, the Court held that plaintiff pharmacists who dispensed ten times the appropriate dosage were dissimilar to other plaintiffs who made minors errors concerning dosages.

The Court of Appeals' found those cases distinguishable from Jackson's:

> [U]nlike *Ruth* and *Colvin*, the employees violated the same rule, the results of that violation were the same, and the harm that ultimately befell the patients because of that violation was the same. Any perceived differences in egregiousness, therefore, are based on DRH's speculation over what might have come to pass.

*Jackson*, 814 F.3d at 781. By the appeals court's measure, it makes little difference—at the prima facie stage—that Heard now claims that she "treated rule/policy violation[s] more severely . . . if, in my clinical judgement, the violation resulted in the endangerment of a patient or others." ECF 41-15, PgID 597. The distinction rests on DRH's speculation.

Thus, even with the added clarity of the new declarations, the Court's previous finding remains unchanged. Duncan's and Little's circumstances were, in some respects, different

5

from Jackson's. But at the prima facie stage, Jackson need only show that her comparators' actions were of "comparable seriousness." *Jackson*, 814 F.3d at 778 (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)). Moore's and Heard's declarations go more to DRH's burden of providing legitimate, non-discriminatory reasons for the difference in treatment. Thus, the Court finds, again, that Jackson has made a prima facie showing of discrimination.

    II.  <u>Pretext</u>

Because a prima facie showing creates a presumption of discrimination, the burden then shifts to the defendant to rebut that presumption by producing evidence that the adverse action was taken for a legitimate, nondiscriminatory reason. *Burdine*, 450 U.S. at 254. Once a legitimate reason is supplied, the burden then returns to the plaintiff, who "must identify evidence from which a reasonable jury could conclude that the proffered reason is actually a pretext for unlawful discrimination." *Jackson*, 814 F.3d at 779. She may satisfy the burden "by showing that the employer's proffered reason for the adverse action (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Id.* (alterations omitted). And at the summary judgment stage, the Court considers all probative evidence in the light most favorable to the plaintiff. *Id.*

Jackson's argument, both here and on appeal, has been that DRH's proffered reason for her termination—that her infraction had objectively more severe consequences—is insufficient. The Court of Appeals already concluded that she provided enough evidence to survive summary judgment and thoroughly explained how a reasonable jury could "reject DRH's explanation for Jackson's differential treatment." *Jackson*, 814 F.3d 769, 782 (6th

Cir. 2016). So again, the narrow task of the Court is to determine whether the new declarations tip the scale. In other words: if a jury were provided with the new declarations, could it reasonably infer that DRH's proffered reason for Jackson's termination was mere pretext?

The declarations are limited. For the most part, Moore's and Heard's declarations merely recount the particulars of the three disciplined employees (Jackson, Duncan, and Little) and explain why they thought Jackson's infraction was more severe. Moore speculates that if she believed Little's and Duncan's patients "presented a danger to [themselves] or others" she would have favored terminations, ECF 41-9, PgID 566, 568, but the statements are just that: speculations. And the same goes for Heard's declaration. *See* ECF 41-15, PgID 596–97 ("Had Mr. Duncan or Mr. Little endangered their patients . . . I would have recommended that they be terminated").

"Pretext" is a "false or weak reason or motive advanced to hide the actual or strong reason or motive." Black's Law Dictionary 1307 (9th ed. 2009). A reasonable jury might believe Moore's and Heard's speculations: if things had been different for Duncan and Little, they too would have been fired. But a reasonable jury could also disbelieve them, or find that distinctions expressed by witnesses four years after the fact are merely advanced to hide the real reason for Jackson's termination. At summary judgment, all reasonable inferences must be drawn in Jackson's favor. And because a reasonable jury could still infer that the difference-in-severity explanation was mere pretext, summary judgment on the basis of this new testimony is unwarranted.

The rest of the new testimony concerns DRH's general staffing practices. The declarations provide a bit more insight on why DRH lacked the incentive to favor males

7

over females. *See, e.g.*, ECF 41-9, PgID 569 (explaining that all MHTs are trained in "physical management and de-escalation techniques"); ECF 41-15, PgID 598 (noting that [b]ecause the gender composition of our patients included both males and females, female MHTs were equally important as male MHTs"); *and* ECF 41-9, PgID 569 (reciting the same thing verbatim). Hash's declaration also reveals that Jackson's replacement was female. ECF 41-21, PgID 620.

Standing alone, the declarants' mere insistence that female MHTs were just as important as male ones is not particularly persuasive. After all, "Jackson was the only female out of fourteen MHTs" and as the Court of Appeals explained, the disparity "supports [Jackson's] contention that DRH preferred males for that particular position" and "weighs in [her] favor." *Jackson*, 814 F.3d at 784. But after DRH terminated Jackson, it replaced her with another female, so evidence begins to tip in DRH's favor.

Evidence that an employer replaced a Title VII plaintiff with a person from within the same protected class as the plaintiff can be strong evidence, but is not necessarily dispositive. *See Jackson v. Richards Med. Co.*, 961 F.2d 575, 587 n.12 (6th Cir. 1992). Other relevant factors may affect the import of subsequent hires; here, the timeline is relevant. Jackson was terminated in September 2013. She filed a sex-discrimination complaint with the EEOC on December 19, 2013. She received her right-to-sue letter on March 5, 2014, and then a little less than one month later, DRH hired her replacement—a female. ECF 41-21, PgID 620. The jury could therefore make a reasonable inference that Jackson was terminated on the basis of her sex, and the choice of her replacement was affected by her legal action. *Cf. Blong v. Sec'y of Army*, 877 F. Supp. 1494, 1502 (D. Kan. 1995) (recognizing that the subsequent hiring of another female was substantially less

8

forceful given that it was less than one month after the complaint was filed and plaintiff was the only female employee out of fourteen).

Jackson clearly engaged in behavior that would ordinarily support negative employment consequences and she therefore has a steep, uphill climb to make at trial. But at the summary judgment stage, the Court "does not weigh the evidence, evaluate the credibility of witnesses, or substitute its judgment for that of the jury." *Arban v. W. Pub. Corp.*, 345 F.3d 390, 400 (6th Cir. 2003). Rather, all reasonable inferences are drawn in Jackson's favor. *See id.* The declarations do not preclude the reasonable inference that Defendant's stated reasons for Jackson's termination were pretextual. Summary judgment is therefore unwarranted.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that Defendant's Second Motion for Summary Judgment [41] is **DENIED**.

**SO ORDERED**.

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: September 12, 2017

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on September 12, 2017, by electronic and/or ordinary mail.

s/David P. Parker
Case Manager